## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EDWARD PLUTZER, on behalf of the Tharanco Group, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**BANKERS TRUST COMPANY OF SOUTH DAKOTA,  a South Dakota Limited Liability Corporation, HARESH T. THARANI, MICHAEL J. SETOLA, SCOTT KANE, and MANU MIRCHANDANI,**<br><br>        **Defendants.** | **Case No.** |

## COMPLAINT

Plaintiff Edward Plutzer, by his undersigned attorneys, on behalf of the Tharanco Group, Inc. Employee Stock Ownership Plan and similarly situated participants in the plan, and their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.     Plaintiff Edward Plutzer ("Plaintiff") brings this suit against: Bankers Trust Company of South Dakota ("BTC"), the trustee for the Tharanco Group, Inc. Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of Tharanco Group, Inc. ("Tharanco")

in 2015; and selling shareholders Haresh T. Tharani, Michael J. Setola, Scott Kane, and Manu Mirchandani (the "Selling Shareholders").

2.     Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of Tharanco allocated to his account in the Plan.

3.     This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by BTC when it caused the Plan to buy shares of Tharanco for more than fair market value in 2015, and other relief.

4.     As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.     At all relevant times, Tharanco was a privately-held company and was the Plan's sponsor and administrator. Tharanco adopted the Plan effective October 21, 2014. On April 27, 2015, the Plan purchased from the Selling Shareholders 100% of the outstanding stock of Tharanco for $133,430,000, which was financed by Tharanco in a fully leveraged transaction with a loan bearing interest at 2.47% that was to be payable over forty equal annual installments of principal and accrued interest on December 31 of each year, except for the first installment of $200,000 of principal made in April 2015 and the second installment of $2,811,571 of principal made in December 2015 (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time Tharanco became an employee-owned company.

6.     BTC represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

7.     The ESOP Transaction allowed the Selling Shareholders to unload their interests in Tharanco above fair market value, for the reasons explained below, and saddle the Plan with tens of millions of dollars of debt payable over a 40-year repayment period to finance the Transaction. BTC failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

8.     The Selling Shareholders are parties in interest who sold shares in the ESOP Transaction. The Selling Shareholders are liable under ERISA for participating in prohibited transactions and BTC's breaches of fiduciary duty under ERISA.

9.     Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by him and similarly situated participants, resulting from BTC's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA, and the Selling Shareholders' participation in these violations.

## JURISDICTION AND VENUE

10.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require BTC to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against BTC and the Selling Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District.

## PARTIES

13.     Plaintiff Edward Plutzer has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff resides in Great Neck, New York. He was Vice President of Sales at Tharanco's Scarlett Dress Division. He was employed at a predecessor that ultimately became part of Tharanco since January 1994, and was employed at Tharanco on the date of its incorporation, October 20, 2014, and continued to be employed there until June 2018. Plaintiff received an allocation of Tharanco stock to his individual Plan account at the end of the first, shortened Plan Year on April 30, 2015, and in subsequent Plan Years. He was vested in shares of Tharanco in his Plan account.

14.     Defendant Bankers Trust Company of South Dakota ("BTC") is a South Dakota Limited Liability Corporation. BTC's headquarters is at 5032 S. Bur Oak Place, Suite 131, Sioux Falls, South Dakota 57108.

15.     BTC is a wholly owned subsidiary of Bankers Trust Company. Bankers Trust Company's corporate headquarters is at 453 7th Street, Des Moines, Iowa 50309.

16.     BTC was the Trustee of the Plan at the time of the ESOP Transaction, and continued in its position as Trustee to the Plan after the Transaction until GreatBanc Trust Company became Trustee in or about April 2016. As Trustee, BTC had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan.

4

17.     In the period in which it was Trustee of the Plan, including at the time of the ESOP Transaction, BTC was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the Trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

18.     When it was Trustee of the Plan, including at the time of the ESOP Transaction, BTC was a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

19.     Defendant Haresh T. Tharani is and was at the time of the ESOP Transaction the founder, Chairman of the Board of Directors, and Chief Executive Officer (CEO) of Tharanco. He was a selling shareholder in the ESOP Transaction. He resides or may be found in this District, where Tharanco is located.

20.     Defendant Haresh T. Tharani was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of Tharanco, directly or indirectly; and/or as a Tharanco director; and/or as an officer of Tharanco.

21.     Defendant Michael J. Setola is and was at the time of the ESOP Transaction a Director and Vice President of Tharanco, and the President and Chief Executive Officer (CEO) of Tharanco Lifestyles LLC, an operating division of Tharanco whose employees are covered by the Plan. On information and belief, he was a selling shareholder in the ESOP Transaction. He resides or may be found in this District, where Tharanco and Tharanco Lifestyles LLC are located.

22.     Defendant Michael J. Setola was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of Tharanco, directly or indirectly; and/or as a Tharanco director and/or officer; and/or as an officer of Tharanco Lifestyles LLC.

23.     Defendant Scott Kane is and was at the time of the ESOP Transaction a Director and the Treasurer of Tharanco, and the Chief Financial Officer (CFO) of Tharanco Lifestyles LLC. He is currently the CFO of Tharanco, after the broadening of his role following the reorganization and consolidation of the Tharanco Group in 2015. On information and belief, he was a selling shareholder in the ESOP Transaction. He resides or may be found in this District, where Tharanco and Tharanco Lifestyles LLC are located.

24.     Defendant Scott Kane was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of Tharanco, directly or indirectly; and/or as a Tharanco director and/or officer; and/or as an officer of Tharanco Lifestyles LLC.

25.     Defendant Manu Mirchandani is and was at the time of the ESOP Transaction a Director, Executive Vice President, and Secretary of Tharanco. On information and belief, he was a selling shareholder in the ESOP Transaction. He resides or may be found in this District, where Tharanco is located.

26.     Defendant Manu Mirchandani was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of Tharanco, directly or indirectly; and/or as a Tharanco director; and/or as an officer of Tharanco.

## FACTUAL ALLEGATIONS

27.     Tharanco bills itself as the leading women's and men's manufacturer in the apparel industry, creating unique and innovative branded and private label product while also offering a compelling brand experience for its customer through exceptional results. Tharanco has its origins in the 1988 founding of The Resource Club Ltd., the first of many affiliates within Tharanco, by Haresh and Tanuja Tharani. Tharanco has become a private holding company that includes real estate, private equity investments, and a variety of apparel companies. Tharanco is located in New York, New York and Secaucus, New Jersey.

28.     From the inception of the Plan, Tharanco's corporate headquarters has been at 134 West 37th Street, 4th Floor, New York, New York 10018.

29.     Tharanco stock is not and never was readily tradable on an established securities market.

30.     Tharanco Lifestyles LLC was incorporated in Delaware on December 30, 2008. Tharanco Lifestyles LLC is currently an operating division of Tharanco. Employees of Tharanco Lifestyles LLC participate in the Plan.

31.     Tharanco Group LLC, a predecessor to Tharanco, was incorporated in Delaware on July 28, 2009.

32.     Tharanco Group, Inc. ("Tharanco") was incorporated in Delaware on October 20, 2014. Tharanco is an S corporation.

33.     Tharanco adopted the Plan with an effective date of October 21, 2014.

34.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

35.     Tharanco identified the Plan as a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of Tharanco.

36.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

37.     The Plan's Forms 5500, Annual Return/Report of Employee Benefit Plan, identify Tharanco as the sponsor and administrator of the Plan.

38.     Tharanco is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

39.     Employees of Tharanco participate in the Plan.

40.     Employees of Tharanco's affiliated entities, including Tharanco Lifestyles LLC, also participate in the Plan.

41.     The Plan's Summary Plan Description (SPD) and Forms 5500 disclose that Tharanco is, and was at all times since the effective date of the Plan, the Plan Administrator.

42.     Tharanco administers the Plan through a Retirement Committee appointed by Tharanco's Board of Directors.

43.     Tharanco is the Plan's administrator, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

44.     Tharanco is and was an ERISA fiduciary to the Plan as its administrator.

45.     The Plan's SPD lists the address of Tharanco Group, Inc., as Plan Administrator, and the Retirement Committee as 134 West 37th Street, 4th Floor, New York, New York 10018.

46.     Tharanco is a named fiduciary under the terms of the Plan document, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).

47.     The Schedule H, Line 4i, Schedule of Assets (Held at End of Year) in the Plan's Forms 5500 represent that Tharanco is a party in interest to the Plan.

48.     Tharanco is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

49.     The Notes to Financial Statements to the Plan's Forms 5500 report that the Plan's investment in Tharanco stock, transactions in that investment, and the loan from Tharanco "qualify as party-in-interest transactions."

50.     The Plan's Forms 5500 were signed by Defendant Manu Mirchandani on behalf of Tharanco in its capacity as Plan Administrator, under penalty of perjury.

51.     Tharanco appointed BTC as Trustee of the Plan. As Trustee, BTC had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Tharanco stock.

52.     As Trustee for the Plan, it was BTC's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and Tharanco, including acquisitions of Tharanco stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

53.     BTC received consideration for its own personal account from Tharanco for its services in the ESOP Transaction, in the form of fees and an indemnification agreement, under a contract made when the Selling Shareholders owned Tharanco.

54.     On April 27, 2015, the Plan purchased from the Selling Shareholders the 7,000,000 outstanding shares of Tharanco for $133,430,000. At that time, Tharanco became 100% employee owned.

55.     The Plan obtained a loan in the amount of $133,430,000 from Tharanco to purchase the shares of Tharanco stock. The note payable is collateralized by unallocated shares of Tharanco stock. The note bears interest at 2.47% per annum and is payable in forty equal annual installments of principal and accrued interest on December 31 of each year, except for the first installment of $200,000 of principal made in April 2015 and the second installment of $2,811,571 of principal made in December 2015.

56.     BTC received consideration for its own personal account from Tharanco for BTC's services in the ESOP Transaction in the form of fees under a contract made between BTC and Tharanco prior to the Plan's purchase of Tharanco. Tharanco paid BTC's trustee fees in connection with the establishment of the Plan directly.

57.     Tharanco's predecessor The Resource Club Ltd. was founded in 1988 by Haresh T. Tharani. He was principal of The Resource Club Ltd. and various other Tharanco entities, including Tharanco Lifestyles LLC and Tharanco Group, Inc., prior to the reorganization and consolidation of the Tharanco Group, Inc. and its sale to the Plan in 2015.

58.     Michael J. Setola and Scott Kane became principals of Tharanco Lifestyles LLC in 2009.

59.     Before, at the time of, and after the ESOP Transaction, Haresh T. Tharani, Michael J. Setola, Scott Kane and Manu Mirchandani were officers and directors of Tharanco.

60.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Haresh T. Tharani, Michael J. Setola, Scott Kane and Manu Mirchandani owned Tharanco stock, directly or indirectly. Haresh T. Tharani, Michael J. Setola, Scott Kane and Manu Mirchandani were 10 percent or more shareholders directly or indirectly of Tharanco. Haresh T.

Tharani, Michael J. Setola, Scott Kane and Manu Mirchandani sold, exchanged or transferred Tharanco stock to the Plan, directly or indirectly. At the time of the ESOP Transaction, Haresh T. Tharani, Michael J. Setola, Scott Kane and Manu Mirchandani were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as 10 percent or more shareholders, directly or indirectly, of Tharanco, and/or as directors and officers.

61.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan paid a control premium for Tharanco even though the Plan did not obtain control over the Tharanco Board of Directors upon its 2015 purchase of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for Tharanco. The Selling Shareholders retained control of the Board as a result of warrants received in exchange for their Tharanco shares and other Transaction and/or corporate documents.

62.     As Trustee, BTC is subject to liability for a payment by the Plan of more than fair market value for Tharanco stock caused by the Plan's payment of a control premium where a previous owner or owners retained control of Tharanco, the Plan's failure to receive a discount for lack of control, and/or other factors in BTC's faulty valuation of Tharanco in the ESOP Transaction.

63.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Tharanco provided financial projections to BTC for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic.

64.     Prior to the filing of the Plan's 2014 Form 5500 on March 16, 2017, the Tharanco shares purchased by the Plan in the ESOP Transaction were re-valued at $13,250,000 as of April 30, 2015, down from the $133,430,000 paid by the Plan.

65.     As reported in the Plan's 2017 Form 5500, the Plan's Tharanco stock was valued as having risen to $30,800,000 as of December 31, 2017.

66.     But the valuation of Tharanco stock dropped in 2018 to $25,200,000. The valuation plummeted further in 2019 to $9,800,000. As of the last valuation reported to the Department of Labor on Form 5500, the Plan's Tharanco stock had therefore decreased 92.6553% from its purchase price in 2015, and 68.1818% from the post-ESOP Transaction high two years earlier at year end 2017. Plaintiff does not aver that any of the valuations referenced in this and the preceding two paragraphs was accurate.

67.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. BTC did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. BTC's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for Tharanco stock in the ESOP Transaction due to BTC's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of Tharanco stock in the ESOP Transaction faulty. Due to the Plan's overpayment, the Plan's participants, including Plaintiff,

12

received diminished stock allocations, saw their Plan take on excessive debt to finance the Transaction, and suffered losses to their individual Plan accounts.

68.     Incentives to BTC to act in favor of the Selling Shareholders in the ESOP Transaction in breach of its duty of loyalty to the Plan included the possibility of business from sellers of companies who understood that BTC applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

69.     BTC is liable to the Plan for the difference between the price paid by the Plan and the fair market value of Tharanco shares at the time of the ESOP Transaction.

70.     The Selling Shareholders are liable to the Plan to repay the difference between the price they received and the fair market value of their Tharanco shares at the time of the ESOP Transaction.

71.     Pursuant to BTC's engagement agreement, Tharanco, when it was owned by the Selling Shareholders, agreed to indemnify BTC as Plan Trustee in connection with the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

72.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The indemnification agreement does not require payment of interest or otherwise account for the time value of money should BTC ultimately be required to reimburse Tharanco.

73.     The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because BTC violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

74.     Payment by Tharanco of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to BTC necessarily would adversely impact Tharanco's equity value and therefore the value of Plan assets. Direct payment or reimbursement of BTC's attorneys' fees, costs, litigation expenses, and liabilities by Tharanco, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

## CLAIMS FOR RELIEF

## COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against BTC**

75.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

76.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here BTC, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Tharanco stock, with a party in interest, here the Selling Shareholders, as took place in the ESOP Transaction.

77.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits BTC from causing the Plan to borrow money from a party in interest, here Tharanco, as took place in the ESOP Transaction.

78.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits BTC from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders, of any assets of the Plan, as took place

in and after the ESOP Transaction with the transfer of Plan assets as payment for Tharanco stock and in continuing payments on the loan.

79.     The stock and loan transactions between the Plan and the parties in interest were authorized by BTC in its capacity as Trustee for the Plan.

80.     BTC caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

81.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

82.     BTC caused the Plan to acquire Tharanco stock from the Selling Shareholders above fair market value and with the proceeds of loans that were used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though BTC was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

83.     BTC received consideration for its own personal account from Tharanco—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

84.     BTC caused and engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), in the ESOP Transaction.

85.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties

imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

86.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

87.    BTC has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against BTC

88.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

89.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

90.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

91.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

92.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

93.     BTC was required to undertake an appropriate and independent investigation of the fair market value of Tharanco stock in or about April 2015 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the Tharanco stock purchased by the Plan.

94.     BTC breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

95.     BTC has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B), 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against BTC

96.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

97.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve BTC, a Plan fiduciary, of responsibility or

liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

98.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

99.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

100.    The indemnification agreement purports to provide payment or reimbursement for the benefit of BTC for its expenses, losses, costs, and damages, including but not limited to attorneys' fees.

101.    To the extent that the indemnification agreement attempts to relieve BTC of its responsibility or liability to discharge its duties under ERISA, or attempts to have Tharanco (a Plan-owned company) and thereby the Plan be responsible for BTC's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

102.    To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation

18

of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

103.    As a result of the foregoing, should it be held liable under the preceding Count I, BTC should be ordered to disgorge any indemnification payments made by Tharanco and/or the Plan, plus interest.

## COUNT IV

### Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against the Selling Shareholders

104.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

105.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

106.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

107.    As a result of the prohibited transactions described above, the Selling Shareholders received Plan assets in payments above fair market value for their Tharanco stock.

108.    The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

109.    The Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their Tharanco stock in the ESOP Transaction, (3) that BTC was a fiduciary to the Plan, (4) that the ESOP Transaction was for above fair market value,

(5) that BTC caused the Plan to engage in transactions prohibited under ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), (6) that BTC breached its fiduciary duties under ERISA, and (7) that the true purpose of the ESOP Transaction was to benefit the Selling Shareholders.

110.    As directors and officers of Tharanco and as selling shareholders, the Selling Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the Selling Shareholders are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

111.    The Selling Shareholders have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

112.    The Selling Shareholders are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## **CLASS ACTION ALLEGATIONS**

113.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the Tharanco Group, Inc. Employee Stock Ownership Plan ("Plan") and the beneficiaries of such participants as of the date of the April 27, 2015 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold their Tharanco Group, Inc. ("Tharanco") stock to the Plan and their immediate families; the directors of Tharanco and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

114.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's Form 5500 filing for 2019 indicates that as of December 31, 2019, there were 192 participants and deceased participants whose beneficiaries were receiving or entitled to receive benefits in the Plan.

115.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i.    Whether BTC served as Trustee in the Plan's acquisition of Tharanco stock;

ii.    Whether BTC was an ERISA fiduciary of the Plan;

iii.    Whether BTC caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Tharanco stock and take loans from parties in interest;

iv.    Whether BTC engaged in good faith valuations of the Tharanco stock in connection with the ESOP Transaction;

v.    Whether BTC caused the Plan to pay more than fair market value for Tharanco stock;

vi.    Whether BTC engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii.    Whether BTC engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

viii.    Whether BTC breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of Tharanco stock in or about April 2015;

ix.   Whether Tharanco was a party in interest;

x.   Whether the Selling Shareholders were parties in interest;

xi.   Whether the Selling Shareholders, as parties in interest, participated in the prohibited transactions;

xii.   The amount of losses suffered by the Plan and its participants as a result of BTC's ERISA violations;

xiii.   The appropriate relief for BTC's violations of ERISA; and

xiv.   The appropriate relief for Selling Shareholders' knowing participation in BTC's violations of ERISA.

116.   Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan paid above fair market value and took on excessive loans for Tharanco stock, resulting in him being allocated fewer shares of stock, and he continues to suffer such losses in the present because BTC failed to correct the overpayment by the Plan in its time as Trustee.

117.   Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

118.   Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for BTC, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

119.    The names and addresses of the Class members are available from the Plan. Notice

will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.    Declare that Defendant BTC caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.    Declare that the Selling Shareholders participated in prohibited transactions with the Plan in violation of ERISA;

C.    Declare that Defendant BTC breached its fiduciary duties under ERISA to the Plan and the class members;

D.    Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it, he, or she has made through use of assets of the Plan;

E.    Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.    Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.      Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

H.      Declare that the indemnification agreement between Defendant BTC and Tharanco violates ERISA § 410, 29 U.S.C. § 1110;

I.      Order Defendant BTC to reimburse Tharanco for any money paid by Tharanco under any indemnification agreement between BTC and Tharanco, plus interest;

J.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.      Order Defendant BTC to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

L.      Order Defendants to pay prejudgment and post-judgment interest;

M.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel; and

N.      Award such other and further relief as the Court deems equitable and just.

Dated:  April 23, 2021                           **BAILEY & GLASSER LLP**

                                                 */s/ Gregory Y. Porter*
                                                 Gregory Y. Porter
                                                 Ryan T. Jenny
                                                 1055 Thomas Jefferson Street, NW
                                                 Suite 540
                                                 Washington, DC 20007
                                                 Telephone: (202) 463-2101
                                                 Facsimile: (202) 463-2103
                                                 gporter@baileyglasser.com
                                                 rjenny@baileyglasser.com

                                                 *Attorneys for Plaintiff*