## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

EDWARD PLUTZER, on behalf of the
Tharanco Group, Inc. Employee Stock
Ownership Plan, and on behalf of a class of
all other persons similarly situated,

                 Plaintiff,

v.

BANKERS TRUST COMPANY OF
SOUTH DAKOTA, a South Dakota Limited
Liability Company, HARESH T. THARANI,
MICHAEL J.  SETOLA, SCOTT KANE, and
MANU MIRCHANDANI,

                 Defendants.

Case No. 1:21-cv-03632-MKV

## MEMORANDUM IN SUPPORT OF BANKERS TRUST COMPANY OF SOUTH DAKOTA'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    I.    Background and Legal Framework of ESOP Transactions. ................................. 3

          A.  ERISA allows ESOPs to acquire employer stock if an independent trustee
              determines that the purchase price is for no more than fair market value. ................... 3

    II.   Summary of the Transaction ........................................................................... 7

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ..................................................................................................................... 8

    I.    Virtually the Entire Complaint Is Baseless Speculation. .................................... 9

    II.   Plaintiff Fails to Adequately Allege a Prohibited Transaction Under
          29 U.S.C. § 1106(a) .................................................................................... 14

    III.  Plaintiff Fails to Adequately Allege a Prohibited Transaction Under
          29 U.S.C. § 1106(B). ................................................................................... 18

    IV.  Plaintiff Has Failed to State a Claim For Any Breach of Fiduciary Duty. ........ 21

CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 3, 8, 14

*Bekker v. Neuberger Berman Grp. LLC*,
  No. 16 CV 6123-LTS-BCM, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) ........................ 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 8, 9

*Bletas v. Deluca*,
  No. 11 CIV. 1777 (NRB), 2011 WL 13130879 (S.D.N.Y. Nov. 15, 2011) ........................... 10

*Cadle Co. v. Rochfort Enterprises (Bahamas) Ltd.*,
  No. 02 CIV. 9348 (LAK), 2003 WL 1702262 (S.D.N.Y. Mar. 31, 2003) .............................. 25

*Chao v. Hall Holding Co.*,
  285 F.3d 415 (6th Cir. 2002), *cert. denied*, 537 U.S. 1168 (2003) ........................... 5

*Cunningham v. Cornell Univ.*,
  No. 16-cv-6525, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) .................................... 15

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983) .......................................................................... passim

*Eyler v. Comm'r*,
  88 F.3d 445 (7th Cir.1996) .................................................................................. 15

*F.H. Krear & Co. v. Nineteen Named Trs.*,
  810 F.2d 1250 (2d Cir. 1987) ............................................................................ 19, 20

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ........................................................................................ 3, 8, 16

*Goldman v. Barrett*,
  825 F. App'x 35 (2d Cir. 2020) ............................................................................ 10

*Grindstaff v. Green*,
  133 F.3d 416 (6th Cir. 1998) ................................................................................. 4

*Henry v. Champlain Enters., Inc.*,
  445 F.3d 610 (2d Cir. 2006) ....................................................................... 4, 5, 14, 15

*Henry v. Champlain Enters., Inc.*,
  No. 01-CV-1681, 2010 WL 2038841 (N.D.N.Y. May 21, 2010) .................................... 13

*In re Am. Int'l Grp., Inc. ERISA Litig. II*,
  No. 08 CIV. 5722 (LTS) (KNF), 2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) ................... 25

*In re Bankr. Est. of Norske Skogindustrier ASA*,
  No. 18-13571, 2021 WL 1687903 (Bankr. S.D.N.Y. Apr. 29, 2021) ............................... 24

*In re Fid. ERISA Fee Litig.*,
   No. CV 19-10335-LTS, 2020 WL 759542 (D. Mass. Feb. 14, 2020),
   *aff'd*, 990 F.3d 50 (1st Cir. 2021) .................................................................. 19, 20, 23

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
   1 F. Supp. 3d 34 (E.D.N.Y. 2014) ........................................................................... 22

*In re Polaroid ERISA Litig.*,
   362 F. Supp. 2d 461 (S.D.N.Y. 2005) ...................................................................... 23

*In re WorldCom, Inc.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003) ...................................................................... 22

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018) ...................................................................................... 9

*Johnson v. The Univ. of Rochester Med. Ctr.*,
   686 F. Supp. 2d 259 (W.D.N.Y. 2010) ..................................................................... 25

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ..................................................................................... 24

*Keach v. U.S. Tr. Co., N.A.*,
   313 F. Supp. 2d 818 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005) ................ 3

*Keach v. U.S. Tr. Co., N.A*,
   419 F.3d 626 (7th Cir. 2005) ............................................................................. 5, 6, 7

*Leber v. Citigroup, Inc.*,
   No. 07 Civ. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ............... 14, 15

*Lee v. Argent Trust Co.*,
   No. 5:19-CV-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ............................... 11

*Matilock, Inc. v. Pouladdej*,
   No. 20-CV-01186-HSG, 2020 WL 3187198 (N.D. Cal. June 15, 2020) .................... 10

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1989) ....................................................................................... 15

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ................................................................................................. 19

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ..................................................................................... 21

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016) .................................................................................... 16

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ..................................................................................... 22

*Rotella v. Wood*,
   528 U.S. 549 (2000) ................................................................................................. 11

*Sacerdote v. New York Univ.*,
    No. 16-CV-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017)................................ 25

*Skin Pathology Assocs. Inc. v. Morgan Stanley & Co.*,
    27 F. Supp. 3d 371 (S.D.N.Y. 2014) ................................................................... 15

*United States v. Empire Educ. Corp.*,
    959 F.Supp.2d 248 (N.D.N.Y. 2013) ................................................................... 24

*Vigeant v. Meek*,
    953 F.3d 1022 (8th Cir. 2020) ................................................................... 22, 23

*Woods v. S. Co.*,
    396 F. Supp. 2d 1351 (N.D. Ga. 2005) ................................................................... 22

*Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004) ................................................................... 22

**Statutes**

26 U.S.C. § 404(a)(9)................................................................................................... 17

29 U.S.C. § 1001 ......................................................................................................... 2

29 U.S.C. § 1002 ............................................................................................... 4, 5, 20

29 U.S.C. § 1104 ............................................................................................... 16, 22

29 U.S.C. § 1106 ................................................................................................. passim

29 U.S.C. § 1108 ................................................................................................. passim

**Rules**

Fed. R. Civ. P. 9 ................................................................................................. passim
Fed. R. Civ. P. 11 ................................................................................................. 9, 10
Fed. R. Civ. P. 12 ................................................................................................. 8

**Regulations**

29 CFR §2550.408e ................................................................................................. 18
Proposed Regulation Relating to the Definition of Adequate Consideration,
    53 Fed. Reg. 17,632 (May 17, 1988) ................................................................... 13

## INTRODUCTION

This lawsuit concerns a transaction involving an employee stock ownership plan, or "ESOP." ESOPs are a type of retirement plan that invest exclusively in the stock of the company sponsoring the ESOP so that employees can share in their employer's success. To promote employee ownership, Congress enacted a series of tax benefits relating to the leveraged stock purchase transactions that make many ESOPs possible. In a typical ESOP transaction, the sponsoring company establishes an ESOP and appoints an independent trustee to represent the ESOP's sole interests. The trustee in turn engages its own advisers, including an appraiser to determine the company's range of fair market value. The trustee and selling shareholders negotiate the terms of the transaction and try to agree on a purchase price not to exceed that range of fair market value. The ESOP—which, having just been established, has no assets of its own—finances the acquisition using debt guaranteed by the sponsoring company.

Plaintiff's Complaint (Dkt. 1, "Compl.") targets such a transaction: the Tharanco Group, Inc. ("Tharanco") ESOP's April 27, 2015 purchase of 100% of Tharanco's outstanding stock for $133,430,000 ("Transaction"). In sum, Plaintiff alleges that:

(i) Tharanco established the ESOP (Compl. ¶ 33) and appointed Bankers Trust Company of South Dakota ("BTCSD") as the ESOP's independent trustee (*id.* ¶ 51);

(ii) Four Tharanco executives ("Selling Shareholders") sold their combined 100% interest in Tharanco to the ESOP in the Transaction (*id.* ¶ 54);

(iii) BTCSD, aided by its advisers, reviewed the Transaction and caused the ESOP to purchase Tharanco stock (*id.* ¶ 67); and

(iv) The Transaction was financed with notes issued to the Selling Shareholders. (*Id.* ¶ 55.).

In other words, Plaintiff alleges that a typical ESOP transaction happened.

1

The ***only*** other factual allegation in the entire Complaint is that the price of Tharanco's stock has decreased in the years following the Transaction, which by itself is insufficient to state a claim.  Beyond that, the Complaint is a tangle of conclusory assertions, unfounded speculation, and conspiratorial insinuation—***none of which follow*** from Plaintiff's lone allegation about the post-Transaction stock price.  Plaintiff claims—based solely on "information and belief"[1]—that BTCSD *purposefully* breached its fiduciary duties by causing the ESOP to acquire Tharanco's stock at an inflated price as a signal to unidentified shareholders at unnamed companies that they, too, could partner with BTCSD to defraud their employees in a levered ESOP transaction.  Plaintiff alleges that BTCSD papered over the alleged fraud by approving a valuation containing multiple errors that artificially increased Tharanco's fair market value.  According to Plaintiff, these unspecified and unsupported acts amount to breaches of BTCSD's fiduciary duties and prohibited transactions under sections 1104 and 1106, respectively, of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

The Complaint epitomizes the "sue first, ask questions later" litigation style that the Federal Rules of Civil Procedure forbid.  Plaintiff offers *zero* plausible factual allegations supporting his claims.  It is simply not possible to infer from Plaintiff's lone factual allegation about Tharanco stock's post-Transaction performance his wild speculation about intentionally inflated financial projections, multiple, glaring valuation errors, and fraudulent schemes.  Thus, the claims against BTCSD in Counts I and II— for causing prohibited transactions and for breach of fiduciary duty, which rest on these insufficient allegations—flunk Rule 8's pleading

---

[1] Plaintiff hedges many of his conclusory allegations by speculating that he "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  *See, e.g.*, Compl. ¶¶ 61, 63, 67.  As discussed below, this disclaimer cannot convert conclusory, fact-free assertions into plausible allegations.

requirements.  Beyond alleging the unremarkable fact that the Transaction occurred, the Complaint's allegations are precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice" to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, Plaintiff's breach of fiduciary duty claims in Count II sound in fraud, triggering Rule 9(b)'s requirement that a party "must state with particularly the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Plaintiff is not within shouting distance of satisfying that requirement.  Indeed, far from pleading the circumstances constituting fraud with particularly, Plaintiff pleads ***no circumstances at all***.  Worse still, the alleged scheme is speculation atop speculation.  It rests on an underlying claim that BTCSD "applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses," Compl. ¶ 68—itself an allegation unsupported by any facts.

Simply put, the Complaint is no more than a strike suit.  Swap out BTCSD for any other provider of ESOP trustee services, and Plaintiff's counsel could target *any* leveraged ESOP transaction.  The lawsuit should be dismissed with prejudice.

## BACKGROUND

I.      **Background and Legal Framework of ESOP Transactions.**

**A.  ERISA allows ESOPs to acquire employer stock if an independent trustee determines that the purchase price is for no more than fair market value.**

ESOPs are a type of benefit plan that "invests primarily in the employer's stock" and fosters employee ownership,  *Keach v. U.S. Tr. Co., N.A.*, 313 F. Supp. 2d 818, 862 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005).  Congress views employee stock ownership as an important goal and, since ERISA's passage in 1974, has consistently encouraged employers to create ESOPs.  *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014)

(describing congressional interest in encouraging ESOPs); *Grindstaff v. Green*, 133 F.3d 416, 422 (6th Cir. 1998) ("Congress has repeatedly expressed its intent to encourage the formation of ESOPs by passing legislation granting such plans favorable treatment, and has warned against judicial . . . action that would thwart that goal.") (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1466 (5th Cir. 1983)).

An ESOP's purchase of stock from company officers or directors is technically a "prohibited transaction" under ERISA section 406(a).  Under 29 U.S.C. § 1002(14)(C), (H), a "party in interest" is an "employee, officer, director . . . or a 10 percent or more shareholder directly or indirectly" of "an employer any of whose employees are covered by the plan[,]" and section 1106(a) prohibits a fiduciary from "caus[ing] the plan to engage in" the "sale or exchange . . . of any property between the plan and a party in interest[,]" including the "acquisition, on behalf of the plan, of any employer security."  29 U.S.C. § 1106(a).  Section 1106(a) transactions are "technical" because they are facially prohibited out of a concern for a potential conflict of interest, but Congress provided statutory and regulatory exemptions because it recognized that engaging in such transactions is often in the plan participants' best interests.

Recognizing that ERISA's prohibited transaction rules would "significantly hamper the implementation of ESOPs, particularly by small companies," Congress created a "conditional exemption from the prohibited transaction rules for acquisition of employer securities by ESOPs and certain other plans."  *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006). The exemption "permits the sale of employer stock by a party in interest to an ESOP if the purchase is made for 'adequate consideration.'"  *Id.* (citing 29 U.S.C. § 1108(e)).  ERISA defines "adequate consideration" in the context of closely held corporations as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of

the plan and in accordance with regulations promulgated by the Secretary [of Labor]." *Id.* (citing 29 U.S.C. § 1002(18)(b)) (alteration in original); *see also Keach*, 419 F.3d at 636 (same); *Chao v. Hall Holding Co.*, 285 F.3d 415, 425 (6th Cir. 2002) (same), *cert. denied*, 537 U.S. 1168 (2003).

In a typical ESOP transaction, an ESOP, represented by an independent trustee, acquires employer stock through a stock purchase transaction from one or more shareholders. *See, e.g.*, *Cunningham*, 716 F.2d at 1459 (describing the mechanics of a typical ESOP transaction). The trustee, in consultation with its professional advisors, conducts due diligence and negotiates with the selling shareholders to arrive at a purchase price. *See, e.g.*, *Keach*, 419 F.3d at 630 (describing advisors typically engaged in an ESOP transaction). The issue of whether the ESOP paid "adequate consideration" in the transaction is "expressly focused upon the *conduct of* the fiduciaries . . . . ESOP fiduciaries will carry their burden to prove that adequate consideration was paid by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing." *Chao*, 285 F.3d at 437 (quoting *Cunningham*, 716 F.2d at 1467-68).

To aid a prudent investigation, trustees often "secur[e] an independent assessment from a financial advisor or legal counsel." *Id.* at 430. For example, trustees typically retain an independent valuation expert to opine on the fair market value of the company's stock and legal counsel to advise it on negotiating the legal terms of the transaction. *See Henry*, 445 F.3d at 614 ("[G]eneral requirements of an ESOP transaction" include hiring "a financial appraiser, and a trustee to represent the ESOP."); *Keach*, 419 F.3d at 636-37 ("[S]ecuring an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation[.]"). Though fiduciaries "need not become experts in the valuation of closely-held stock" because

"they are entitled to rely on the expertise of others," *Cunningham*, 716 F.2d at 1474, a fiduciary must "investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's advice is reasonably justified under the circumstances." *Keach*, 419 F.3d at 637 (internal quotation marks omitted).

Although newly formed ESOPs have no assets when first established, sponsor companies never require—and rarely ask—employee-participants to contribute any money to finance the ESOP's initial stock purchase. Instead, ESOPs nearly always borrow funds to finance their initial purchases. Vaughn Gordy, et al., Nat'l Ctr. for Emp. Ownership, LEVERAGED ESOPS AND EMPLOYEE BUYOUTS 5-9 (6th ed. 2017) ("NCEO Leveraged ESOPs").[2] While there are many ways to structure the financing of an ESOP transaction, one common arrangement involves the sponsoring company borrowing funds from a third party, like a financial institution (commonly called the "external loan"), and lending those funds—often at a below-market interest rate—to the ESOP for its stock purchase (commonly called the "internal loan"):



NCEO Leveraged ESOPS at 130.

---

[2] This text is published by the National Center for Employee Ownership ("NCEO"). Founded in 1981, the NCEO is a nonprofit trade organization focused on employee ownership with over 3,000 members across the country that, among other things, "generate[s] original research, facilitate[s] the exchange of best practices . . . , [and] feature[s] the best and most current writing by experts in our publications . . . ." Nat'l Ctr. for Emp. Ownership, *About*, https://www.nceo.org/about (last visited July 27, 2021).

Parties typically structure ESOP acquisitions using an internal loan with a long repayment period and low interest rate to spread out distributions of company stock to employees over many years.  *See generally* NCEO Leveraged ESOPs at 5-9.  Each year after the initial transaction, the ESOP receives funds from the sponsoring company, either in the form of required contributions or dividends, and sends those funds back to the company to pay down the internal loan (which the company often then uses to pay down the external loan).  *Id.*  As the ESOP pays down the internal loan, shares of the company's stock held in a suspense account are released to ESOP participant accounts in proportion to the amount of the amortized debt.  *Id.*  This structure motivates several generations of employees to maximize a company's performance and value—a chief purpose of ESOPs—by sharing the company's growth and prosperity with them over time.

## II.    Summary of the Transaction

Founded in 1988 as The Resource Club Ltd. and headquartered in New York, Tharanco is a leading manufacturer of women's and men's apparel.  *See* https://www.tharancogroup.com/the-group/ (last visited June 23, 2021); Compl. ¶ 27-28.    Today, Tharanco is a private holding company whose business includes real estate, private equity investments, and apparel companies. *See id.*; Compl. ¶ 27.

After creating an ESOP for its employees in 2014, Tharanco engaged BTCSD as the ESOP's independent trustee in connection with the proposed purchase of Tharanco's outstanding stock.  *See* Compl. ¶ 5.  As the ESOP's independent trustee, BTCSD had authority to negotiate the terms of the ESOP transaction with the selling shareholders, and to review and approve the Transaction on behalf of the Plan.  *See id*. ¶¶ 6, 16, 51.  As is typical for ESOP transactions, the Transaction was debt financed:  the ESOP acquired a 100% interest in Tharanco for $133.43

7

million, *see id*. ¶ 54, financed by a $133.43 million loan from Tharanco with a forty-year term and a 2.47% interest rate.  *See* ¶ 55.

## LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) are an "important mechanism for weeding out meritless claims" brought under ERISA.  *Fifth Third Bancorp*, 573 U.S. at 425.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original).  Instead, a complaint's allegations "must be enough to raise a right to relief above the speculative level."  *Id*.  Allegations must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## ARGUMENT

The Court should dismiss Plaintiff's Complaint for four reasons.  First, *virtually all* of the Complaint's key allegations about the Transaction are pure speculation, and cannot "unlock the doors of discovery."  *Iqbal*, 556 U.S. at 678-79.  Plaintiff's factual allegation about the Tharanco stock price simply does not and cannot support his conclusory allegations about inflated projections, valuation errors, and supposed schemes.  In short, Plaintiff's allegations in support of his prohibited transaction claims in Count I are inadequate and fail to state a claim upon which relief can be granted.  Second, Plaintiff has not adequately alleged, as he must, that the Transaction does not fall within one of ERISA's prohibited transaction exemptions.  Third, the

8

Complaint's allegations in support of Plaintiff's breach of fiduciary claims in Count II are so
threadbare that they, too, must fail.  Finally, the breach of fiduciary duty claims in Count II
sound in fraud but fail to meet Federal Rule of Civil Procedure 9's heighted standard to plead
fraud with particularity.  The Court should disregard those allegations and dismiss the claims.

## I.      Virtually the Entire Complaint Is Baseless Speculation.

By presenting a complaint to a court, a party represents that "the factual contentions have
evidentiary support or, if specifically so identified, *will likely* have evidentiary support after a
reasonable opportunity for further investigation and discovery."  Fed. R. Civ. P. 11(b)(3)
(emphasis added).  The Federal Rules permit this flexibility out of recognition that, as is
sometimes the case with ERISA lawsuits, plaintiffs cannot state a claim "without pleading facts
which tend systematically to be in the sole possession of the defendants."  *Innova Hosp. San
Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730-31 (5th Cir.
2018).

Yet prefacing nearly every allegation with the disclaimer that it "will likely have
evidentiary support after a reasonable opportunity for further investigation or discovery," as
Plaintiff does, *see* Compl. ¶¶ 63, 67, cannot convert conclusory, fact-free assertions into
plausible allegations.  The Supreme Court has rejected the notion that such "a wholly conclusory
statement of [a] claim would survive a motion to dismiss whenever the pleadings left open the
possibility that a plaintiff might later establish some set of [undisclosed] facts to support
recovery."  *Twombly*, 550 U.S. at 561 (internal quotation marks omitted) (second alteration in
original).  There are limits to Rule 11's allowance of pleadings based on evidence anticipated
after further investigation:

> Tolerance of factual contentions in initial pleadings by plaintiffs or defendants
> when specifically identified as made on information and belief does not relieve
> litigants from the obligation to conduct an appropriate investigation into the

> facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification.

Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment.

In other words, while a plaintiff need not know everything about what occurred to make out a claim, he must know *something*. *Matilock, Inc. v. Pouladdej*, No. 20-CV-01186-HSG, 2020 WL 3187198, at *4 (N.D. Cal. June 15, 2020) (overreliance on phrase "on information and belief" supports the "inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree"). A plaintiff pleading that future discovery will likely offer evidentiary support for his claims must offer a "good reason" for that belief. *Goldman v. Barrett*, 825 F. App'x 35, 38 (2d Cir. 2020) ("[A]n attorney may not rely on discovery to manufacture a claim that lacks factual support in the first instance."); *see also* Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 9(E) (4th ed. 2008) ("There is a distinction between a reasonable inference—one *based upon and rationally linked to the evidence known to the presenter*—and rank speculation.") (emphasis added). Simply put, claiming that future discovery "will likely" yield evidentiary support does not give plaintiffs "free reign to fire shots into the proverbial dark." *Bletas v. Deluca*, No. 11 CIV. 1777 (NRB), 2011 WL 13130879, at *10 (S.D.N.Y. Nov. 15, 2011).

Plaintiff has given no reason—let alone a good one—to believe that future discovery will likely yield evidentiary support for his claims. Beyond alleging that an ESOP transaction occurred, Plaintiff cites **only one other "fact"** not prefaced by the "will likely have evidentiary support" disclaimer: that the value of the Tharanco shares the Plan purchased in the Transaction "decreased" from their purchase price in the ensuing years. Compl. ¶¶ 64-67. Plaintiff implies the price *must* be excessive because the shares were "re-valued" downward after the Transaction, ¶ 64, thus, discovery "will likely" yield evidence of this overvaluation. ¶ 63. This implication is

baseless, as explained by the court in *Lee v. Argent Trust Co.*, No. 5:19-CV-156, 2019 WL
3729721 (E.D.N.C. Aug. 7, 2019):

> Plaintiff reasons that, on the basis of the $64.8 million valuation a few weeks later,
> the per-share value dropped to $8.10 in such a short period of time that the first
> purchase could not have been at fair-market value. But it is better to conceive of
> this transaction, as defendants have argued, as being comparable to the purchase of
> a mortgage-financed house. Suppose that a buyer finds a house that is listed at
> $198,000. The buyer has no money for a down payment, however, so she obtains
> a $198,000 mortgage loan in order to buy the house. The buyer has taken on a
> $198,000 debt (the mortgage) and, in return, obtained a $198,000 asset (the home).
> As a result, she has experienced no change in equity; her asset and her
> corresponding obligation result in $0 in new equity. But now suppose that the
> $198,000 house is actually worth $262,800, and our buyer was able to purchase the
> house at a discount. She still has her $198,000 mortgage, but now she also has
> $64,800 in equity; if she were to turn around and sell the house at its $262,800
> value, after paying off her mortgage, she would be left with a tidy profit of $64,800.

*Id.* at *3. The ESOP is like the hypothetical homebuyer in that example. It took out a $133
million loan to purchase a $133 million asset—100% of Tharanco's stock. After the
Transaction, the ESOP's *equity* value is the value of the asset *minus* the Plan's debt obligation,
just like the homebuyer. And, like the homebuyer in *Lee*, the fact that the ESOP's post-
Transaction equity had a value greater than zero—$13.25 million, according to Plaintiff—means
it was "left with a tidy profit." There is thus no reason to "reasonably anticipate" that discovery
would yield evidence supporting an allegedly inflated purchase price given that Plaintiff has not
plausibly alleged that the price was inflated. *Rotella v. Wood*, 528 U.S. 549, 560 (2000). Simply
put, Plaintiff offers no rational link between what he knows and what he hopes discovery will
yield.

The few other allegations having anything to do with BTCSD's process amount to
conclusory assertions and generic recitations of valuation-related issues often complained of in
ESOP lawsuits. Absent from the Complaint is ***any*** plausible allegation that such issues actually
occurred in ***this*** Transaction. For example, Paragraph 63's allegation that Tharanco provided

11

BTCSD with "unreasonably optimistic" financial projections is conclusory.  Plaintiff alleges

nothing about what the projections were, why they were "optimistic," whether or how BTCSD or

its valuation advisor relied on the projections in valuing the Tharanco stock, or whether BTCSD

or its advisor adjusted or discounted the projections to account for any undue optimism.  Mere

bald assertions that BTCSD received "optimistic" financial projections cannot support a claim

that BTCSD breached its fiduciary duties in assessing and approving the Transaction.

Plaintiff's allegations about purported flaws in the valuation BTCSD relied on are equally

deficient.  For example, Plaintiff asserts that "[t]he Plan paid a control premium for Tharanco

even though the Plan did not obtain control over [Tharanco, and] the Plan did not receive a

discount for lack of control.  Compl. ¶ 61.  A "control premium" adjusts the share price upward

to reflect the value of the control rights that a buyer may obtain.  To begin with, once again,

Plaintiff alleges no facts supporting the conclusory assertion that the ESOP either paid a control

premium or did not receive a discount for lack of control.  But, even assuming it were true that

the Selling Shareholders remained on Tharanco's board post-Transaction and that the ESOP paid

a control premium, those facts would not support a claim that BTCSD breached any fiduciary

duty.  Plaintiff conveniently overlooks that the ESOP owned every single share of Tharanco's

stock after the Transaction.  If the Selling Shareholders remained in their positions after the

Transaction, it was only because the new shareholder—the ESOP—wanted them to.  Moreover,

as reflected in proposed regulations set forth by the Department of Labor, ESOPs can pay a

control premium for a control interest *even if* selling shareholders remain on the company's

board or involved in other official positions at the company after a transaction:

> The Department proposes that a plan purchasing control may pay a control
> premium, and a plan selling control should receive a control premium. . . . [A] plan
> would not fail to receive control merely because individuals who were previously

officers, directors or shareholders of the corporation continue as plan fiduciaries or corporate officials after the plan has acquired the securities. . . .

Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17,632-01, 17,636 (May 17, 1988) ("Proposed Regulation").[3]  Without more, Plaintiff's control allegations cannot support a claim that the ESOP overpaid.

The only other allegations about BTCSD's process are in Paragraph 60, and they fail to satisfy Plaintiff's minimum pleading requirements. First, Plaintiff baldly declares that BTCSD's due diligence was not "similar to the due diligence that is performed by third-party buyers in large corporate transactions." Compl. ¶ 67.  Once again, this statement is conclusory.  Plaintiff offers no allegations about the due diligence processes in "large corporate transactions," how BTCSD's due diligence process differed, or why, even if true, that would matter in the context of an ESOP's purchase of a privately held, mid-sized company.  Then, engaging in rank speculation, Plaintiff asserts a laundry list of errors BTCSD supposedly made in determining the value of Tharanco's stock: "reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenging underlying assumptions, and/or other factors . . . ." Compl. ¶ 67.  This is just a generic list of common valuation issues that can arise in any business valuation.[4]  Plaintiff provides no plausible factual basis to suggest that even one of these issues was present in BTCSD's due diligence process.  His sole factual allegation regarding the

---

[3] Though never finalized and thus not binding, courts have looked to the Proposed Regulation for guidance in interpreting the adequate consideration standard.  *Henry v. Champlain Enters., Inc.*, No. 01-CV-1681, 2010 WL 2038841, at *1 (N.D.N.Y. May 21, 2010).

[4] Indeed, the allegation is a bare recitation of the factors the Department of Labor applies when reviewing an ESOP trustee's valuation due diligence.  *See* Agreement Concerning Fiduciary Engagements and Process Requirements for Employer Stock Transactions (June 2, 2014), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/enforcement/esop-agreement-appraisal-guidelines.pdf.

post-Transaction Tharanco stock value decrease is far from sufficient to infer that the valuation

BTCSD relied on had any (let alone all) of the valuation errors Plaintiff asserts.  This type of

"kitchen sink" pleading fails to give BTCSD fair notice of the claims against it and is exactly the

type of claim the Supreme Court instructed in *Twombly* and *Iqbal* must be dismissed.

## II.     Plaintiff Fails to Adequately Allege a Prohibited Transaction Under 29 U.S.C. § 1106(a).

Plaintiff claims in Count I that BTCSD violated section 1106(a)(1)(A), which prohibits a

fiduciary from causing a plan "to engage in a transaction, if he knows or should know that such

transaction constitutes a direct or indirect — (A) sale of exchange . . . of any property between

the plan and a party in interest[.]"  29 U.S.C. § 1106(a)(1)(A).  Plaintiff has failed to state a claim

that BTCSD caused a prohibited transaction under section 1106(a) because he has not adequately

pleaded that the statutory exemption does not apply.

Recognizing that ERISA's broad prohibited transaction rules would "significantly

hamper the implementation of ESOPs, particularly by small companies," Congress created "a

conditional exemption from the prohibited transaction rules for acquisition of employer

securities by ESOPs and certain other plans."  *Henry*, 445 F.3d at 618 (citing *Cunningham,* 716

F.2d at 1465).  This exemption "permits the sale of employer stock by a party in interest to an

ESOP if the purchase is made for 'adequate consideration.'"  *Id.* (citing 29 U.S.C. § 1108(e)).

In the Second Circuit, plaintiffs "must allege conduct that is plausibly actionable under

the relevant statute and must go beyond creating a 'sheer possibility that a defendant has acted

unlawfully.'"  *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329 (SHS), 2010 WL 935442, at *10

(S.D.N.Y. Mar. 16, 2010) (quoting *Iqbal*, 556 U.S. at 678).  If a "complaint does not allege any

basis for presuming that a defendant's conduct fell outside a statutory exemption . . . it is

deficient."  *Id*.  Thus, a complaint alleging violations of ERISA section 1106(a) must also allege

facts sufficient to support a plausible inference that section 1108's exemptions do not apply.  *Id.* at \*9; *see also Skin Pathology Assocs. Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 374-78 (S.D.N.Y. 2014) (dismissing complaint based on ERISA section 1108(b)(2) and DOL regulations).  Plaintiff falls far short of that requirement.[5]

"Adequate consideration" is determined not by focusing on the dollar amount paid, but on the process the fiduciary applied when determining the value to be paid.  *See Henry*, 445 F.3d at 619-20 ("[T]he adequate consideration test focuses on the conduct of the fiduciaries in determining the price, not the price itself.") (quoting *Eyler v. Comm'r*, 88 F.3d 445, 455 (7th Cir.1996)); *see also Cunningham*, 716 F.2d at 1467 ("[T]he adequate consideration test, like the prudent man rule, is expressly focused upon the *conduct* of the fiduciaries.").  To determine whether an ESOP pays no more than adequate consideration for a company's shares, the ESOP trustee must determine the range of fair market value of the stock to be acquired.  For companies

---

[5] Even if plaintiffs did not have to plead aspects of section 1108's exemptions to state a prohibited transaction claim because they are affirmative defenses, courts "must still consider whether the facts in the Complaint *plainly* establish the exemption's applicability."  *Bekker v. Neuberger Berman Grp. LLC*, No. 16 CV 6123-LTS-BCM, 2018 WL 4636841, at \*9 (S.D.N.Y. Sept. 27, 2018) (emphasis added and omitted) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1989) (stating a court can consider an affirmative defense on a motion to dismiss if its applicability is clearly established by the facts alleged in the complaint)).  As shown above, the sole "fact" Plaintiff relies on to allege that the ESOP paid more than adequate consideration to acquire Tharanco stock—the supposed post-Transaction drop in the stock's value—in fact shows the exact opposite: the ESOP made a "tidy profit" on the Transaction.  Thus, section 1108's exemption applies on the face of the Complaint itself.  In any event, even when section 1108's applicability is not at issue, a plaintiff must do more than just allege that a transaction occurred and repeat the statutory elements to state a prohibited transaction claim.  Otherwise, fiduciaries would face potential liability for every ESOP transaction.  *See Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2017 WL 4358769, at \*10 (S.D.N.Y. Sept. 29, 2017) (creating a pleading standard coextensive with the basic elements of § 1106 "would transform [§ 1106] . . . into a statutory provision that proscribes retirement pension plan's most basic operations").

with publicly traded stock, this determination is often simple—a trustee may rely on the market price, with certain limited exceptions. *See Dudenhoeffer*, 573 U.S. at 425-27.

Appraisal of privately held stock, on the other hand, is a "very inexact science." *Cunningham*, 716 F.2d at 1473. Because of the "uncertainty inherent in the process and the variety of potential fact patterns," ESOP fiduciaries, when dealing with privately held companies, rely on the expertise of others to determine whether no more than adequate consideration is paid. *Id*. While reliance on a qualified appraiser alone does not guarantee that an ESOP fiduciary discharged its obligations under ERISA, fiduciaries may point to an appraiser's guidance as evidence of a good-faith investigation. *Perez v. Bruister*, 823 F.3d 250, 263 (5th Cir. 2016). Unless there is evidence of fraud, conspiracy, or self-dealing, it is inappropriate for a court to view a fiduciary's reliance on an appraiser's advice with 20/20 hindsight. *See, e.g.*, *id.*; *see also* Am. Inst. of Certified Public Accts., *Valuation of Privately-Held-Company Equity Securities Issued as Compensation* 107-09 (2013) (noting the risk of bias in a retrospective valuation). Thus, ESOP fiduciaries establish adequate consideration based on a determination of fair market value through a prudent investigation under "the circumstances *then prevailing*." *Bruister*, 823 F.3d at 262-63 (emphasis added); *see also* 29 U.S.C. § 1104(a)(1)(B).

The Complaint fails to plausibly allege that BTCSD's process for reviewing the proposed Transaction and determining adequate consideration was flawed or that BTCSD caused the ESOP to overpay for the Tharanco stock. Indeed, as shown above, the Complaint alleges virtually nothing at all about the process BTCSD undertook — nothing about BTCSD's due diligence procedures; nothing about BTCSD's valuation advisor, its qualifications, or its valuation process; nothing about the information BTCSD provided to its valuation advisor;

16

nothing about BTCSD's legal advisor or its process for reviewing the deal's legal provisions; and nothing about BTCSD's negotiation of the Transaction's terms.

Once again, the sole "fact" cited in support of the allegation that the Plan paid more than adequate consideration is that the stock's price was "re-valued" downward after the Transaction. Compl. ¶¶ 64-66. As discussed above, this is implausible on its face; if anything, the post-Transaction valuations *confirm* that the Plan paid no more than adequate consideration for the Tharanco stock. Indeed, rather than plead that section 1108(e)'s exemption *does not* apply, as he must under Second Circuit precedent, Plaintiff has alleged facts showing the exemption *does* apply.

In sum, Plaintiff's threadbare and conclusory allegations fall well short of plausibly alleging that BTCSD caused the Plan to pay more than adequate consideration for Tharanco stock.[6]

---

[6] Plaintiff makes cursory allegations that BTCSD caused the ESOP to borrow money from a party in interest, Tharanco, in violation of 29 U.S.C. § 1106(a)(1)(B), and that BTCSD caused a transfer of plan assets, the Transaction's consideration, to a party in interest, the Selling Shareholder, in violation of 29 U.S.C. § 1106(a)(1)(D). Compl. ¶¶ 77-78. However, the same adequate consideration analysis applied to 29 U.S.C. § 1106(a)(1)(A) also applies to section 1106(a)(1)(B) and (D). *See* 29 U.S.C. §§ 1108(b)(17), (e).

Additionally, as to Plaintiff's section 1106(a)(1)(B) claims, Plaintiff overlooks that an ESOP has no cash of its own except amounts received in the form of employer contributions, which are subject to strict annual limits imposed by the IRS. *See* I.R.C. § 404(a)(9), 26 U.S.C. § 404(a)(9). Thus, the *only way* to accomplish an ESOP stock purchase such as this one without violating IRS contribution limits is for the ESOP to borrow the cash needed to complete the transaction. Taken to its logical end, Plaintiff's contention that a loan from Tharanco to the ESOP violates ERISA would mean that the ESOPs that ERISA specifically authorizes and Congress sought to encourage could no longer exist. That is why Congress included in ERISA an exemption for loans to ESOPs for the benefit of plan participants and beneficiaries, so long as the loan is "at an interest rate which is not in excess of a reasonable rate." 29 U.S.C. § 1108(b)(3)(B). Plaintiff nowhere alleges that the interest rate on the ESOP loan—which BTCSD would have reviewed as part of its diligence in connection with the Transaction—was unreasonable.

**III.    Plaintiff Fails to Adequately Allege a Prohibited Transaction Under 29 U.S.C. § 1106(B).**

Count I also claims that BTCSD violated section 1106(b)(2), which provides that plan fiduciaries may not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants." Compl. ¶ 81; 29 U.S.C. § 1106(b)(2). This claim fails because Plaintiff has alleged facts confirming the application of the adequate consideration exemption to the Transaction. *See supra* at 17; 29 U.S.C. § 1108(e) ("Sections 1106 and 1107 of this title shall not apply" when the elements of section 408(e) are met); 29 CFR §2550.408e ("Section 408(e) . . . exempts from the prohibitions of section 406(a) and 406(b)(1) and (2) of the Act any acquisition or sale by a plan of qualifying employer securities."). Moreover, the only allegation in support of this claim is that, in approving the Transaction, BTCSD "primarily" benefitted the Selling Shareholder by "caus[ing] the Plan to acquire Tharanco stock from the Selling Shareholders above fair market value and with the proceeds of loans that were used to pay the Selling Shareholders." Compl. ¶ 82. This amounts to no more than a recitation of the elements of the claim. Plaintiff alleges no facts supporting that BTCSD "act[ed] . . . on behalf of" or "represent[ed]" the Selling Shareholders in connection with the Transaction. Indeed, the Complaint itself contradicts the claim; Plaintiff's allegations *support* the conclusion that BTCSD acted on behalf of the ESOP and its participants. *See, e.g.*, Compl. ¶ 1 (BTCSD was "the trustee for the [ESOP]"), ¶ 3 ("BTC[SD] . . . caused the Plan to buy shares"), *id.* ¶ 6 ("BTC[SD] represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf."), *id.* ¶ 51 ("Tharanco appointed BTC[SD] as Trustee of the Plan."). Parroting a claim's elements with no factual support, as Plaintiff does here, does not state a claim for relief.

Plaintiff's claim under section 1106(b)(3) likewise fails.  That section provides that a fiduciary may not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  29 U.S.C. § 1106(b)(3).  To begin with, a claim under section 1106(b)(3) depends on an allegation of fiduciary status.  *Id.* ("A *fiduciary* with respect to a plan shall not . . . receive any consideration for his own personal account . . . .) (emphasis added); *see also* DOL Adv. Op. 99-03A (Jan. 15, 1999) ("[A] *fiduciary* does not engage in an act described in section 406(b)(3) . . . if the *fiduciary* does not use any of its authority, control, or responsibility to cause a third party to pay to the *fiduciary* any compensation in connection with a transaction . . . .") (emphasis added).  Plaintiff alleges generally that BTCSD "was a fiduciary of the Plan."  Compl. ¶ 17.  "[F]iduciary status is not an all or nothing proposition," however.  *In re Fid. ERISA Fee Litig.*, No. CV 19-10335-LTS, 2020 WL 759542, at *5 (D. Mass. Feb. 14, 2020), *aff'd*, 990 F.3d 50 (1st Cir. 2021).  The "threshold question" for any claim that a fiduciary violated ERISA, then, is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added).  Service providers such as BTCSD ordinarily are not fiduciaries with respect to their compensation, the "action subject to complaint" in Plaintiff's claim under Section 1106(b)(3).  *See* Compl. ¶ 83 ("BTC[SD] received consideration for its own personal account from Tharanco . . . as Trustee for the Plan in the ESOP Transaction.").  The critical inquiry for assigning fiduciary responsibility for a service provider's compensation is who controlled the "decision whether or not, and on what terms, to enter into [the] agreement."  *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987).  A service provider such as BTCSD may be a fiduciary for other purposes, but it becomes a fiduciary as to its own compensation only if its

19

agreement with the plan "give[s] it such control over factors that determine the actual amount of its compensation." *Id.* at 1259.  Plaintiff alleges no facts suggesting that BTCSD controlled Tharanco's decision to engage it as ESOP trustee, or that BTCSD somehow controlled the amount it was paid.  In fact, the *only* fact Plaintiff alleges about BTCSD's fees is that Tharanco—who, unlike the Selling Shareholders, was not a "party dealing with [the] plan," 29 U.S.C. § 1106(b)(3); DOL Advisory Op. 91-44A (Nov. 11, 1991)—paid them "under a contract made between BTC[SD] and Tharanco prior to the Plan's purchase of Tharanco."  Compl. ¶ 56. In other words, BTCSD's compensation was governed by the sort of arm's-length bargaining that ensures a service provider is "unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him."  *F.H. Krear*, 810 F.2d at 1259.  Because BTCSD was not acting as a fiduciary with respect to its compensation, Plaintiff's claim under section 1106(b)(3) cannot succeed.

Even if Plaintiff had alleged that BTCSD was a fiduciary with respect to its own compensation, the claim still fails because Plaintiff has pleaded no facts in support of it other than that Tharanco paid BTCSD to act as trustee.  Compl. ¶ 56.  Because an ESOP has no assets when first established, *see supra*, it is common practice for the sponsor company to pay the trustee's fees on the ESOP's behalf.  Indeed, ERISA section 1108(b)(2) permits parties in interest (which all service providers are, 29 U.S.C. § 1002(14)(B)), to make reasonable arrangements for services if they receive "no more than reasonable compensation."  29 U.S.C. § 1108(b)(2) (providing that section 1106 does not apply to "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor").  Plaintiff offers no factual allegations about BTCSD's

compensation, let alone that it was unreasonable.  For this reason, Plaintiff's claim that BTCSD breached its fiduciary duty under section 1108(b)(3) should be dismissed.

**IV.     Plaintiff Has Failed to State a Claim For Any Breach of Fiduciary Duty.**

In Count II, Plaintiff alleges that BTCSD breached the fiduciary duties of prudence and loyalty under ERISA by failing to conduct "an appropriate investigation[, which] would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the Tharanco stock."  Compl. ¶ 93.  Both claims fail.

To begin with, claims for breach of the duty of prudence must either refer directly to defendants' knowledge, methods, or conduct, or make "circumstantial factual allegations" from which a court "may reasonably infer . . . that the process was flawed."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (internal quotation marks omitted).  Plaintiff does not refer directly to any imprudent process, and, indeed, the Complaint omits *any* reference to BTCSD's decision-making process.  Plaintiff must instead provide sufficient factual allegations from which this Court can reasonably infer that BTCSD's process was flawed.  He has failed to do so.

As discussed above, the only "facts" that Plaintiff alleges is that an ESOP transaction occurred, and that the stock the ESOP acquired was "re-valued" downward after the Transaction. This allegation is an insufficient basis to infer that BTCSD's process was in any way deficient; indeed, its supports the *opposite* inference, given that Tharanco's post-Transaction stock price suggests that the ESOP enjoyed a "tidy profit."  Simply put, the Complaint fails to plausibly allege that BTCSD's process for reviewing the proposed Transaction and determining adequate consideration was flawed or that BTCSD caused the ESOP to overpay for the Tharanco stock. For that reason, Plaintiff's claim for breach of the fiduciary duty of prudence should be dismissed.

As for Plaintiff's disloyalty claim, ERISA section 404(a)(1) imposes on plan fiduciaries a duty to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. 1104(a)(1). To make out a disloyalty claim, Plaintiff must plausibly allege that BTCSD acted self-interestedly, or to further a third party's interests, and thereby failed to "act with an 'eye single' to the interests of the Plan beneficiaries." *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 758 (S.D.N.Y. 2003). Plaintiff's disloyalty claim fails for two reasons.

First, Plaintiff speculates that BTCSD breached fiduciary duties under ERISA by fraudulently inflating the price the ESOP paid for Tharanco stock in the Transaction. Such allegations sound in fraud. A claim sounds in fraud when, "although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim." *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 269 (S.D.N.Y. 2004). When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Even if, as here, fraud is not a necessary element of a particular claim, heightened pleading standards "will apply if the plaintiff has alleged a unified course of fraudulent conduct and relied entirely on that course of conduct as the basis of the claim." *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 54 (E.D.N.Y. 2014) (cleaned up); *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (particularity requirement applies to "all averments of fraud . . . and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action") (internal quotation marks omitted).[7]

---

[7] Many courts have concluded that Rule 9(b)'s requirement apply to claims brought under ERISA. Courts apply Rule 9(b) to ERISA breach of fiduciary duty claims where the allegations underlying those claims sound in fraud. *See, e.g.*, *Vigeant v. Meek*, 953 F.3d 1022, 1027-28 (8th Cir. 2020) (applying Rule 9(b) to dismiss claims that ESOP trustee breached its fiduciary duties in connection with valuation of sponsor company's stock); *Woods v. S. Co.*, 396 F. Supp. 2d

The Complaint rests entirely on Plaintiff's allegations of a fraudulent scheme in which the Selling Shareholders and BTCSD are supposed to have manipulated Tharanco's financial information to boost Tharanco's fair market value.  Plaintiff alleges that BTCSD agreed to "act in favor of the Selling Shareholders" by causing the ESOP to pay them more than fair market value for their Tharanco stock.  Comp. ¶ 68.  According to Plaintiff, BTCSD had an incentive to favor the Selling Shareholders because "sellers of [other] companies" would learn that "BTCSD applied a lesser degree of due diligence in ESOP purchases," which would earn BTCSD the "possibility of business" from those other sellers.  *Id*.  Plaintiff asserts that, to paper over the fraud, Tharanco provided fraudulent financial projections, *id*. ¶¶ 63, and that BTCSD agreed to a valuation that inflated Tharanco's fair market value in several ways.  *Id*. ¶ 61 (alleging that BTCSD did not apply a discount for lack of control and instead applied a control premium); *id*. ¶ 67 (alleging that BTCSD used "unreliable or out-of-date financials . . . and/or fail[ed] to test assumptions . . . and/or [relied on] other factors" that inflated Tharanco's value).

Plaintiff's vague insinuations of an illicit scheme do not come close to satisfying Rule 9's heightened pleading requirement for fraud.  The Complaint includes, at most, all of three

---

1351, 1359-60 & n.5 (N.D. Ga. 2005) (acknowledging that although ERISA generally requires only notice pleading, "[a] more rigorous pleading requirement may be imposed when a plaintiff's ERISA claim amounts to an allegation of fraud").  Courts within the Second Circuit have, in different circumstances, held that Rule 9(b)'s heightened pleading requirements are inapplicable to claims arising under ERISA.  *See, e.g.*, *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005).  But those cases are distinguishable from this case because the commission of the fraud was incidental to the alleged breach of fiduciary duty.  For example, the plaintiffs in *In re Polaroid* alleged that corporate executives misled the public about Polaroid's deteriorating financial situation through accounting tricks.  *Id.* at 467.  While defendants, who were plan fiduciaries, knew the truth of Polaroid's perilous condition, they did not themselves commit fraud; instead, plaintiffs alleged, they continued to imprudently invest the plan's asset in Polaroid stock.  Here, the commission of the fraud and the breach of fiduciary duty are the same, according to Plaintiff.  Plaintiff therefore must plead the elements of the fraud with particularity.  *See Vigeant*, 953 F.3d at 1027 ("Rule 9(b) applies to a breach of fiduciary duty claim when the alleged breach *is* the commission of a fraud.") (emphasis added).

paragraphs about the supposed fraud.  Compl. ¶¶ 63, 67, 68.  Rule 9(b) requires far more: "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the . . . allegedly fraudulent acts, when they occurred, and who engaged in them."  *United States v. Empire Educ. Corp.*, 959 F.Supp.2d 248, 254 (N.D.N.Y. 2013).  The Complaint alleges none of the "the who, what, when, where and how" required by Rule 9(b).  *In re Bankr. Est. of Norske Skogindustrier ASA*, No. 18-13571, 2021 WL 1687903, at *24 (Bankr. S.D.N.Y. Apr. 29, 2021).

The Complaint also lacks any details about how the alleged fraudsters executed their plan to inflate the ESOP's purchase price.  Plaintiff's only allegation in that regard is to provide a generic list of common valuation issues in ESOP transactions and then to assert in conclusory fashion that these issues pervaded the valuation BTCSD relied on.  *See* Compl. ¶ 62 (alleging liability for supposed failure to obtain a discount for lack of control, application of control premium, "and/or other factors"); *id.* ¶ 67 (listing issues such as projections, financials, discount rates, comparable companies, assumptions, "and/or" other factors).  As discussed below, Plaintiff provides no factual basis for these allegations, let alone any specifics.  Reciting a laundry list of common valuation issues that ***might*** arise in any stock transaction and that ***could*** have increased the fair market value of Tharanco's stock is insufficient to plead fraud under Rule 9.

Plaintiff's allegations about BTCSD's supposed financial incentives to engage in the scheme are also paper-thin and amount to no more than vague insinuations.  Simply asserting, as Plaintiff does in paragraph 68 of the Complaint, that a business has a general incentive to boost earnings or receive additional compensation is insufficient to plausibly allege that the business took such an action.  *See Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the

fraud.").  As noted above, the Complaint contains zero facts about which sellers and companies BTCSD was supposedly catering to or about how the scheme worked.  Indeed, it is not clear how these companies would even know that BTCSD had fraudulently inflated Tharanco's share price, unless they had access to the confidential valuation BTCSD relied on *and* independently knew Tharanco's "true" value—implausible facts Plaintiff does not allege.

In short, the Complaint's scant allegations regarding the supposed scheme to inflate the ESOP's purchase price fail to satisfy Rule 9(b)'s requirement that parties plead fraud with particularity.  Where claims sounding in fraud fail to satisfy Rule 9(b), Second Circuit courts dismiss them outright. *See, e.g.*, *Cadle Co. v. Rochfort Enterprises (Bahamas) Ltd.*, No. 02 CIV. 9348 (LAK), 2003 WL 1702262, at *1 (S.D.N.Y. Mar. 31, 2003) (dismissing claim "for failure to allege fraud with particularity").  Dismissing Count II for this reason advances Rule 9's goal of scuttling expensive "fishing expeditions, and protecting defendants from groundless charges that may damage their reputations."  *Johnson v. The Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 267 (W.D.N.Y. 2010).[8]

## CONCLUSION

For these reasons, BTCSD requests that the Complaint be dismissed in full with prejudice.

---

[8] Plaintiff's disloyalty claim fails for a second reason: it improperly piggybacks on his prudence claim.  *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) ("To state a loyalty-based claim under ERISA § 404(a)(1)(A), a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts.") (emphasis omitted).  For example, Plaintiff alleges that BTCSD acted "in favor of the Selling Shareholders" by "appl[ying] a lesser degree of due diligence in [the Transaction] than is typical for non-ESOP-buyers' purchases of businesses."  Compl. ¶ 68.  This is just a different way to say BTCSD employed an imprudent process.  Plaintiff identifies no "actual and specific conflict" or any facts "that would support an inference of disloyalty, as opposed to imprudence." *In re Am. Int'l Grp., Inc. ERISA Litig. II*, No. 08 CIV. 5722 (LTS) (KNF), 2011 WL 1226459, at *10 (S.D.N.Y. Mar. 31, 2011).

Dated: July 30, 2021

*/s/ Lars C. Golumbic*
Lars C. Golumbic*
Mark C. Nielsen
Sean C. Abouchedid*
Ross P. McSweeney*
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W.
Washington, D.C., 20006
(T) 202-861-6615
(F) 202-659-4503
lcg@groom.com
mcn@groom.com
sabouchedid@groom.com
rmcsweeney@groom.com

*appearing pro hac vice*

26