USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/28/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWARD PLUTZER, on behalf of the Tharanco
Group, Inc. Employee Stock Ownership Plan, and on
behalf of a class of all other persons similarly
situated,

               Plaintiff,

        -against-

BANKERS TRUST COMPANY OF SOUTH
DAKOTA, a South Dakota Limited Liability
Corporation, HARESH T. THARANI, MICHAEL J.
SETOLA, SCOTT KANE, and MANU
MIRCHANDANI,

             Defendants.

1:21-cv-3632 (MKV)

**OPINION AND ORDER
DISMISSING PLAINTIFF'S
COMPLAINT**

---

MARY KAY VYSKOCIL, United States District Judge:

This case involves allegations of violations of statutory provisions in the Employee

Retirement Income Security Act ("ERISA").  Plaintiff Edward Plutzer alleges that Defendant

Bankers Trust Company of South Dakota ("BTC") engaged in an employee benefit plan

transaction prohibited by ERISA and, in so doing, breached its fiduciary duties as trustee of that

plan.  Plaintiff also alleges that Defendants Haresh T. Tharani, Michael J. Setola, Scott Kane,

and Manu Mirchandani (the "Individual Defendants"), owners or directors of the employer

sponsoring the benefit plan, knew or should have known of the unlawful transaction.  For the

reasons set out in this Opinion, the Court dismisses Plaintiff's Complaint for lack of standing.

[ECF No. 1 ("Compl.")].

**BACKGROUND**

I.     **ERISA AND ESOP PLANS**

The Court begins with an overview of the carefully laid framework governing employee benefit plans under ERISA.  The employee benefit plan must be "established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  In that plan, or a procedure specified in the plan, a fiduciary is named.  29 U.S.C. 1102(a)(2).  The fiduciary has "authority to control and manage the operation and administration of the plan."  29 U.S.C. § 1102(a)(1).  With limited enumerated exceptions, the plan or fiduciary appoints a trustee to manage the assets of the plan.  29 U.S.C. 1103(a).  The employer-company is referred to as the plan's "sponsor," which may also serve as the plan "administrator."  29 U.S.C. § 1002(16)(A)-(B).  The employees of said company are "participants" in the plan.  29 U.S.C. § 1002(5)-(7).  As participants, they "may become eligible to receive a benefit of any type from [the plan]."  29 U.S.C. § 1002(7).  ERISA further denotes that certain entities and individuals may be a "party in interest" to an employee benefit plan.  29 U.S.C. § 1002(14).  A non-exhaustive list of who may be a "party in interest" includes "any fiduciary," "a person providing services to [the employee benefit plan]," "an employer any of whose employees are covered," and an "owner, direct or indirect, of 50 percent or more of the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation."  29 U.S.C. § 1002(14).

This case involves an employee stock ownership plan ("ESOP") transaction.  An ESOP is an employee benefit plan administered under ERISA that invests primarily in "qualifying employer securities."  29 U.S.C. § 1107(d)(6).  The proto-typical ESOP transaction is one involving shares of stock in the employer, in other words, one where an employer-administered ESOP purchases stock in the employer-administrator's company, providing the employee-participants with ownership interest in the employer-company.

ERISA sets forth the rules that govern these would-be self-dealing transactions. ERISA prohibits a fiduciary to "cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect" "sale or exchange," "lending of money or other extension of credit," "between the plan and a party in interest;" or the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A)-(D). ERISA further prohibits a plan "fiduciary" from "act[ing] in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(2)-(3).

ERISA then provides exceptions to these prohibitions. *See* 29 U.S.C. §§ 1106(a), 1108. For example, and relevant here, ERISA explicitly states that "Section[] 1106 . . . shall not apply to the acquisition or sale by a plan of qualifying employer securities . . . if such acquisition, sale, or lease is for adequate consideration." 29 U.S.C. § 1108(e).[1]

---

[1] The Parties, and the ERISA case law in general, sometimes refer to the applicable provisions of ERISA using the numbering in place at the time ERISA was first enacted, before being codified at 29 United States Code Sections 1001 *et seq. See* Employment Retirement Income Security Act, Pub. L. No. 93-406, 88 Stat. 829 (1974). The Court will cite to the current official code for provisions of ERISA, but may refer to certain sections by their ERISA nomenclature. For the avoidance of doubt, the Court provides below a non-exhaustive list of the provisions referenced:

| ERISA Section | United States Code Section |
|---|---|
| Section 3 | 29 U.S.C. § 1102 |
| Section 404 | 29 U.S.C. § 1104 |
| Section 406 | 29 U.S.C. § 1106 |
| Section 408 | 29 U.S.C. § 1108 |
| Section 409 | 29 U.S.C. § 1109 |
| Section 410 | 29 U.S.C. § 1110 |
| Section 502(a) | 29 U.S.C. § 1132(a) |

II.     RELEVANT FACTS

The following facts are drawn from Plaintiff's Complaint and are construed in the light most favorable to him for purposes of this motion.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

Tharanco Group Inc. ("Tharanco") is a "leading women's and men's manufacturer in the apparel industry."  Compl. ¶ 27.  Tharanaco is a privately held company incorporated in Delaware.  *See* Compl. ¶¶ 5, 29, 32.  Tharanco, as sponsor and administrator, adopted a "Leveraged ESOP" plan on October 21, 2014 that "was designed to invest primarily in the employer securities of Tharanco."  Compl. ¶¶ 5, 32, 35, 41.  Employees of Tharanco, including Plaintiff Edward Plutzer, participate in the Plan and "separate individual account[s] [were] established for each participant."  Compl. ¶¶ 2, 36, 39.  As administrator for the Plan, Tharanco is a named ERISA fiduciary.  Compl. ¶¶ 44, 46.  Plan forms "were signed by Defendant Manu Mirchandani on behalf of Tharanco in its capacity as Plan Administrator."  Compl. ¶ 50.

As fiduciary, Tharanco appointed Bankers Trust Company of South Dakota ("BTC") to serve as the trustee of the Plan, and BTC had "sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf."  Compl. ¶¶ 6, 51.  On April 27, 2015, the Plan purchased "100% of the outstanding stock of Tharanco for $133,430,000," in total 7,000,000 shares, from Defendants Haresh T. Tharani, Michael J. Setola, Scott Kane, and Manu Mirchandani (the "Individual Defendants").  Compl. ¶¶ 1, 5, 54.  The transaction was financed by a loan "collateralized by unallocated shares of Tharanco stock" that "bears interest at 2.47% per annum and is payable in forty equal annual installments of principal and accrued interest."  Compl. ¶ 55.  Before and after the transaction, the Individual Defendants worked as "officers and directors of Tharanco," although the company is now "100% employee owned."  Compl. ¶¶ 54, 59.  For its services in the transaction, BTC "received consideration for its own personal account

from Tharanco" and "trustee fees in connection with the establishment of the Plan." Compl. ¶ 56.

Following the ESOP transaction, Tharanco shares were "re-valued at $13,250,000" in 2015.  Compl. ¶ 64.  Two years later, in 2017, the value rose to $30,800,000.  Compl. ¶ 65.  In 2018, the shares were valued at $25,200,000.  Compl. ¶ 66.  In 2019, the valuation dipped to $9,800,000.  Compl. ¶ 66.  Plaintiff therefore alleges that the value of Tharanco stock had "decreased 92.6553% from its purchase price in 2015, and 68.1818% from the post-ESOP Transaction high two years earlier at the year end 2017," but "does not aver that any of the valuations [he] reference[s]" were "accurate."  Compl. ¶ 66.

## III.    PROCEDURAL HISTORY

Plaintiff's Complaint asserts that he, and other participants in the Plan, suffered losses "caused by BTC when it caused the Plan to buy shares of Tharanco for more than fair market value in 2015."  Compl. ¶ 3.  The ESOP transaction "allowed the [Individual Defendants] to unload their interests in Tharanco above fair market value" and "saddle the Plan with tens of millions of dollars of debt payable over a 40-year repayment period."  Compl. ¶ 7.  Plaintiff alleges that BTC "failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants," and the Individual Shareholders "are liable under ERISA for participating in prohibited transactions and BTC's breaches of fiduciary duty."  Compl. ¶ 8.

Defendants now move to dismiss Plaintiff's Complaint [ECF No. 1] for failure to state a claim.  [ECF Nos. 50, 52].  BTC and the Individual Defendants filed memoranda of law in support of their motion [ECF No. 51, ("BTC Mem."); ECF No. 53, ("ID Mem.")].  Plaintiff opposed the motion to dismiss [ECF No. 56, ("Opp.")].  After BTC and the Individual Defendants filed their respective replies [ECF No. 62, ("BTC Reply")]; [ECF No. 64, ("ID Reply")], Plaintiff filed a notice of supplemental authority [ECF No. 66], to which BTC

responded [ECF No. 67]. The Court has carefully reviewed the arguments made in all submissions to the Court.

## LEGAL STANDARDS

### I.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. On this motion, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy*, 482 F.3d at 191. On a Rule 12(b)(6) motion, the issue is not whether the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on the evidence. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the "plausibility standard" articulated in *Iqbal* "is not akin to a 'probability requirement,' it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* At bottom, Plaintiff must "nudg[e] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569. Otherwise, the complaint must be dismissed. *Id.*

## II.     ARTICLE III STANDING

Article III of the United States Constitution limits the Court's judicial powers to resolving "cases or controversies."  U.S. Const. art. III.  "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  The Court must determine whether the Complaint "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue."  *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).

Though Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court has a duty to consider *sua sponte* constitutional Article III standing to ensure that is has jurisdiction to entertain the case.  *See Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (courts are "required to raise" threshold jurisdictional issues "*sua sponte*") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) (where plaintiffs lack Article III standing, a court "has no subject matter jurisdiction to hear their claim" and so should raise the issue *sua sponte*); *Poindexter v. Nash*, 333 F.3d 372, 383 (2d Cir. 2003) ("Indeed, if the parties do not call a jurisdictional defect to the attention of the court, the court has the duty to raise it *sua sponte*." (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)); *Simmonds v. I.N.S.*, 326 F.3d 351, 358 n.8 (2d Cir. 2003) ("Article III ripeness is a constitutionally mandated jurisdictional prerequisite, and so its absence must be noted by a court *sua sponte*.") (citing *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998)).

## DISCUSSION

To bring a suit under ERISA, a prospective plaintiff must have both a cause of action under the statute and Article III standing. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). A statutory cause of action provided in ERISA cannot, by itself, confer standing on a plaintiff to bring suit. *Thole*, 140 S. Ct. at 1618-20 (statutory causes of action under ERISA do not automatically confer Article III standing); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 ("Injury in fact is a constitutional requirement and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (internal quotation marks and citation omitted).

Defendants' Motions to Dismiss challenge three causes of action: 1) a claim against BTC for causing and engaging in a prohibited transaction pursuant to 29 U.S.C. § 1106(a)-(b); 2) a claim against BTC for breach of fiduciary duty pursuant to 29 U.S.C. § 1104(a); and 3) a claim against the Individual Defendants for engaging in a prohibited transaction pursuant to 29 U.S.C. § 1132(a)(3).[2] All Defendants urge that Plaintiff's pleadings fall far short of that which is required to state a claim upon which relief can be granted. *See* BTC Mem. at 9; ID Mem. at 6. Plaintiff rejoins that he has adequately pled the requirements of a cognizable cause of action, especially in the ERISA context. *See* Opp. at 7-8.

The gravamen of Plaintiff's Complaint is that the Defendants "caused the Plan to buy shares of Tharanco for more than fair market value in 2015," resulting in losses to the Plan

---

[2] The Complaint also asserts a claim against BTC for a "violation of ERISA" pursuant to 29 U.S.C. § 1110 and 1104(a)(1)(A)-(B) ("Count Three"). That Count seeks an order that BTC must "disgorge any indemnification payments made by Tharanco and/or the plan, plus interest" should BTC "be held liable under Count I [engaging in a prohibited transaction]." Compl. ¶ 103. Because Defendants do not move to dismiss Count Three, which by its terms is cognizable only if Count One survives, the Court does not address or discuss Count Three.

participants.  Compl. ¶ 3.  Plaintiff appears to plead that the 2015 ESOP transaction was for

"more than fair market value" because, following the transaction, the Tharanco shares were "re-

valued at $13,250,000" from the "$133,430,000 paid by the Plan."  Compl. ¶ 64.  Plaintiff also

points to a 2017 valuation of the shares, which assessed their "value[]" as $30,800,000.  Compl.

¶ 65.  Over the next two years the "value" of the Tharanco shares fluctuated before settling at

$9,800,000 in 2019.  Compl. ¶ 66.  Plaintiff argues that given "the value of Tharanco stock, and

given the valuation swings, including after BTC was replaced as Plan Trustee, discovery into

company projections and other valuators' valuations and methodologies, including BTC's

successors, will be warranted."  Opp. at 12.

The Tharanco ESOP transaction was debt financed.  Compl. ¶ 5.  Defendants argue that

the "ESOP's *equity* value is the value of the asset *minus* the Plan's debt obligation," and so the

value of the ESOP will necessarily be lower until it pays off the loan.  BTC Mem. at 11

(emphasis in original); ID Mem. at 4-5.  In support of this argument, Defendants point to a recent

decision out of North Carolina, *Lee v. Argent Trust Co.*, 2019 WL 3729721 (E.D.N.C. Aug. 7,

2019).  BTC Mem. at 10-12; ID Mem. at 6-8.  That case also involved allegations of a prohibited

transaction and breach of fiduciary duty in a privately held, debt-financed, ESOP transaction.

The *Lee* court analogized that leveraged ESOP transactions are "comparable to the purchase of a

mortgage-financed house," 2019 WL 3729721 2019 WL 3729721 at *4:

> Suppose that a buyer finds a house that is listed at $198,000. The
> buyer has no money for a down payment, however, so she obtains a
> $198,000 mortgage loan in order to buy the house. The buyer has
> taken on a $198,000 debt (the mortgage) and, in return, obtained a
> $198,000 asset (the home).  As a result, she has experienced no
> change in equity; her asset and her corresponding obligation result
> in $0 in new equity.  But now suppose that the $198,000 house is
> actually worth $262,800, and our buyer was able to purchase the
> house at a discount.  She still has her $198,000 mortgage, but now
> she also has $64,800 in equity; if she were to turn around and sell

> the house at its $262,800 value, after paying off her mortgage, she
> would be left with a tidy profit of $64,800.

*Id.* The *Lee* court concluded that because the ESOP's value had grown, acquisition indebtedness notwithstanding, the plaintiff had "not plausibly alleged that she suffered any concrete and particularized injury" and therefore lacked standing. *Id.* at *10-11.

Plaintiff contends that *Lee* is an "outlier" that is "both distinguishable and wrong," Opp. at 12, in part, because he does "not allege an initial post-Transaction drop in valuation flowing from the leveraged nature of the Plan's stock purchase is evidence the Plan paid more than fair market value." Opp. at 13. Instead, "discovery is needed to access facts relating to due diligence and fair market value." Opp. at 13.

The Court cannot countenance Plaintiff's contentions that because a "$133,430,000 stock purchase by" an ESOP occurred, from individuals who are purportedly parties in interest "who transacted with the fiduciary trustee," that "Plaintiff necessarily has asserted his § 406 *prima facie* case on those claims" and the "Court need go no further." Opp. at 1. As previously stated, "[t]o establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent," and "(2) that the injury was caused by the defendant." *Thole*, 140 S. Ct. at 1618. Plaintiff fails to establish standing on both of these fronts.

### A.   *Plaintiff does not plead a concrete, particularized, and actual injury in fact*

Injury in fact is the "first and foremost of standing's" elements. *Spokeo*, 578 U.S. at 338 (internal quotation marks and alterations omitted). An injury must be "concrete," "that is, it must actually exist." *Spokeo*, 578 U.S. at 340. "Article III standing requires a concrete injury even in the context of a statutory violation" and "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement

whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 342.  "Congress sought to encourage the creation of ESOPs." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014).  It defies credulity, and bedrock constitutional principles, that Congress could sidestep Article III in providing an individual right to sue for a violation of ERISA simply because a company engaged in an ESOP transaction.

As to any actual harm, Plaintiff here has walked back any contention that any of the values he cites for Tharanco stock actually reflect the value of the stock, and rests solely on his belief that pleading the elements of an ERISA claim are sufficient.  *See* Compl. ¶ 66 ("Plaintiff does not aver that any of the valuations referenced [in the Complaint are] accurate."); Opp. at 12 (the "allegations [of value] merely suggest issues of fact on the value of Tharanco stock, and given the valuation swings . . . discovery into company projections and valuators' valuations and methodologies . . . will be warranted."); Opp. at 13 ( Plaintiff does "not allege an initial post-Transaction drop in valuation flowing from the leveraged nature of the Plan's stock purchase is evidence the Plan paid more than fair market value.").  If the values are unreliable, and in any event professedly *unneeded*, Plaintiff has not alleged a concrete injury.

At this stage, Plaintiff contends he needs discovery in essence to generate standing.  But it is unclear why discovery should be necessary to make a threshold showing of injury.  Plaintiff snubs the "valuations" of the Tharanco stock as it is listed in the Plan's "Form 5500" each year. *See* Compl. ¶¶ 64-66.  As Plaintiff acknowledges, that document is *publicly filed* and "reported to the Department of Labor."  Compl. ¶ 66.  "Courts regularly take notice of publicly available documents including regulatory filings," like Form 5500s.  *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *3 (S.D.N.Y. Sept. 29, 2017) (taking judicial notice of a Form 5500 on a motion to dismiss in an ERISA case).  But here, Plaintiff does not include the Form 5500s as exhibits to

his Complaint or ask the Court to take judicial notice of them.  Instead, he declines to use publicly available documents that might underscore any allegation that the value of the Plan has dropped year-over-year, instead declaring them inaccurate and unnecessary for his claims.

Without a showing that any harm flowed from the transaction, the Court cannot conclude that Plaintiff has suffered a constitutionally cognizable injury.

### B. *Plaintiff does not plead that the injury was caused by either BTC or the Individual Defendants*

Even assuming that Plaintiff could show that he suffered a concrete injury, such an injury cannot be traced to either BTC or the Individual Defendants.  "The causal connection element of Article III standing, *i.e.*, the requirement that the plaintiff's injury be fairly traceable to the challenged action of the defendant . . . does not create an onerous standard.  For example, it is a standard lower than that of proximate causation."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).  But Plaintiff cannot even meet that low threshold.

**The Individual Defendants.**  Plaintiff prefaces many of his allegations with the panacea that he believes the allegations in a given paragraph "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  *See* Compl. ¶¶ 60, 61, 63, 67, 72. Plaintiff applies this refrain to allegations essential to a viable claim against the Individual Defendants:  that the Individual Defendants "owned Tharanco stock, directly or indirectly" and were "10 percent or more shareholders directly or indirectly of Tharanco," before selling the stock to the plan, Compl. ¶ 60, so as to qualify as "parties in interest" under ERISA § 3(14), Compl. ¶ 108.  If the Individual Defendants are not "parties in interest," they cannot be held liable for a prohibited transaction under ERISA § 502(a)(3).  *See* Compl. ¶ 111 (stating that "[a]s parties in interest, the [Individual Defendants] are liable for violations of ERISA § 406(a)(1)(A) and (D)"; ERISA § 406(a) (barring "Prohibited transactions" "between plan and party in

interest.").  Where Plaintiff does not allege in his pleadings that the Individual Defendants are "parties in interest" for purposes of liability, it cannot follow that the Individual Defendants caused any injury to Plaintiff.  *Harry Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) (a plaintiff must "clearly allege" facts demonstrating standing); *cf. Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (a plaintiff is obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

   **Bankers Trust Company.**  Plaintiff disavows that the valuation of Tharanco stock was "accurate," and believes that it is not necessary to his claim. Opp. at 12.  At the same time, he argues that the inaccurate valuations in the years following show that "there were two further drops in valuation in 2018 and 2019, which cannot be attributed to the 2015 debt and which suggest issues of fact about the accuracy of company projections provided to BTC, its due diligence, and its valuator's methodology." *See* Opp. at 13.  BTC, however, ceased to serve as trustee of the Plan in 2016.  Compl. ¶ 16.  Thereafter, "GreatBanc Trustee became Trustee," and the valuations apparently dropped a year *after* GreatBanc—a non-party—took the helm from BTC.  Compl. ¶¶ 16, 65.  There are insufficient factual allegations to support a claim that the stock price decreasing—to the extent that Plaintiff now argues that the valuations are a reliable metric of harm—*after* BTC was no longer trustee fairly draws a cognizable nexus between BTC's conduct and any harm to Plaintiff or the Plan's participants.  Plaintiff himself appears to acknowledge that conduct by the non-party trustee successor may have affected the Plan. *See* Opp. at 12 (arguing that "given the valuation swings, including after BTC was replaced as Plan Trustee, discovery into company projections and other valuators' valuations and methodologies, *including BTC's successors*, will be warranted") (emphasis added).

\*       \*       \*

While the Court raises standing *sua sponte*, the issues discussed should not come as a surprise to the Parties.  All Parties discuss the court's decision in *Lee* in the context of the argument that Plaintiff's claims are entirely speculative.  The speculative nature of Plaintiff's claims also means that he fails to show any injury that is concrete and particularized.  The Court notes that the *Lee* court dismissed the case for lack of standing.  *Lee*, 2019 WL 372972, at \*10-11.  All Parties, including Plaintiff, were on notice that at least one other court had found jurisdictional defects in Plaintiff's theory of the case, and yet Plaintiff cannot overcome these factual deficiencies.

## CONCLUSION

For the reasons contained herein, the Court concludes that Plaintiff has not made a showing of Article III standing sufficient to bring this suit.  As such, the Court is without subject matter jurisdiction to adjudicate the merits.  Plaintiff's Complaint is therefore DISMISSED WITHOUT PREJUDICE.  Defendants' motions for oral argument are denied.  [ECF Nos. 54, 63].  The Clerk of the Court respectfully is requested to terminate the motions at ECF Nos. 50, 54, 63, and 65, and close this case.

**SO ORDERED.**

Date:  **February 28, 2022**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**